UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HOWARD CROSBY and OMAR FATTAH,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PETROMED, INC., a Nevada corporation; PETROMED, LTD., a Canadian corporation; PETROMED, PLC (a/k/a/ PETRMOED, PLC-UK), a United Kingdom corporation; PETROMED CORPORATION, a Belize corporation; HAGAI AMIR and JANE DOE AMIR, husband and wife d/b/a ABBERLEY INTERNATIONAL, LTD.; RUSSELL KOCH and JANE DOE KOCH, husband and wife, d/b/a ATLANTIQUE CAPITAL GROUP and BOSWELL SYSTEMS CORPORATIONS; PETROMED CONSORTIUM CORPORATION OF THE BAHAMAS, a Bahamian corporation; LYLE DURHAM and DEBORAH L. DURHAM, husband and wife; THOMAS J. HARRIS, CPA, and JANE DOE HARRIS, husband and wife; JOHN DOES 1 THROUGH 50, INCLUSIVE,<br><br>　　　　　Defendants. | NO. CV-09-5055-EFS<br><br>**ORDER GRANTING AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

ORDER ~ 1

A hearing was held in the above-entitled matter on September 2-3, 2009 in Richland. Before the Court was Plaintiffs' Motion for Preliminary Injunction. (Ct. Rec. 6.) Melody D. Farance and Michael H. Church appeared on behalf of Plaintiffs. J. Jarrette Sandlin appeared on behalf of the individual Defendants and John J. Tollefsen appeared on behalf of the corporate Defendants.

Plaintiffs seek an injunction that does three things:

1) prevents Defendants from transferring, secreting, dissipating, or selling any assets to any Defendant or to any third-party individual or entity;

2) prevents Defendants from destroying books, records, accounts, ledgers, computer drives and files, or any other documentation identifying assets; and

3) orders Defendants to return certain assets to the proper entity or entities. (Ct. Rec. 6 at 2.)

This Court previously granted Plaintiffs' *Ex Parte* Motion for an Immediate Temporary Restraining Order (Ct. Rec. 2) enjoining the conduct described in 1) and 2). (Ct. Rec. 15.)

After reviewing the submitted materials and relevant authority, the Court is fully informed and grants and denies in part Plaintiffs' motion.

## I. Background

This case arises out of an investment Defendants solicited from Plaintiffs in PetroMed, Inc. (hereafter "Inc."). Inc. was originally a Nevada corporation owned by the Kern family. At some point, the Kern family let this name lapse. In November 2000, Defendants incorporated a company called Kelsey Environmental Technologies (hereafter "Kelsey").

ORDER ~ 2

In July 2003, Kelsey changed its name to PetroMed, Inc. Incorporated by Defendants Amir, Koch, and Durham, Inc. was a startup to explore oil and gas off the Israeli coast. This corporation was terminated by administrative action of the state of Nevada on December 1, 2003, and the name PetroMed, Inc. now belongs once again to the Kern family and is unrelated to Defendants.

In 2006, Defendants began to apply for exploratory permits from the Israeli government. These permits grant the right to perform exploratory tests for oil in a certain territory in the sea, and also the right to obtain drilling licenses in the future. Defendants applied for the permits in Inc.'s name. The exploratory permits are issued by the Israeli Ministry of Infrastructure. Permits last for 18 months, after which they expire. Parties with permits must perform certain seismic tests in order to receive drilling licenses from the Ministry. These permits and the subsequently-acquired licenses are the only significant asset of any of the Defendants.

On December 30, 2005, Defendants created PetroMed Ltd. (hereafter "Ltd."), a Canadian corporation with its headquarters in Toronto. Initially, Defendants believed they would list Ltd. on the Toronto Stock Exchange to raise the necessary funds for the seismic studies. All of the assets and shares of Inc. were transferred to Ltd. Thus, the exploratory permits, which had been applied for in Inc.'s name and using Inc.'s funds, were issued to Ltd.

Subsequently, Defendants were convinced that they could raise more money if they listed on the Frankfurt Stock Exchange. In order to be able to list on the Frankfurt Stock Exchange, Ltd. transferred all its

ORDER ~ 3

assets to PetroMed PLC (hereafter "PLC"), a UK corporation created on June 3, 2006. PLC was listed on the Frankfurt Stock Exchange, but it had only small trading volume.

After it was discovered that the London-based promoter who helped list PLC on the Frankfurt Stock Exchange had taken 2 million shares for himself, PLC performed a 50:1 reverse stock split in order to prevent the promoter from profiting from his malfeasance and diminishing the stock's value. This reverse split, coupled with the issuance of three (3) million additional shares to Mecklin and Palm Capital, allegedly resulted in a dilution of shareholder value of 69.75%. Additionally, PLC redomiciled in Belize and changed its name to PetroMed Corp. (hereafter "Corp."), which was created July 9, 2007. The move to Belize was ostensibly prompted by fears of a lawsuit in British courts by the promoter against PLC. The assets from the original Inc. are all now in Corp.

In February 2007, PLC was supposed to begin a joint venture with Altmark whereby Altmark would issue bonds to raise funds for drilling in exchange for the rights to drill 160 square kilometers of PLC's total 3600 square kilometers. This deal never materialized because the funds were never raised. In preparation for this deal, Defendants created PetroMed Consortium (hereafter "Consortium") on April 10, 2005. Consortium was domiciled in the Bahamas. The alleged purpose of Consortium was to protect the shareholders of PLC from liability if something went wrong with the bonds. The parties dispute whether Defendants ever transferred any corporate assets to Consortium, though

ORDER ~ 4

it appears that none were transferred because Altmark failed to raise funds.

On July 15, 2008, the Israeli Ministry of Infrastructure Corp. Issued to Corp. two (2) drilling licenses for the same territories for which Corp. acquired exploratory permits in 2006, after the exploratory permits expired. These licenses last for three (3) years, and can be renewed for an additional four (4), for a total of seven (7) years. At the same time, Corp. also obtained a new exploratory permit. Presently, Corp. is in negotiations with Delek, an Israeli oil company, to create a joint venture whereby Corp. would transfer some portion of the rights to the licenses and permit in exchange for assistance with further exploration and drilling. The explorations are expected to cost a total of fourteen million dollars, which Corp. lacks. Corp. also allegedly obtained a ship from WesternGeco in order to perform the seismic 2-d studies in the territory for which they acquired the new exploratory permit, so that Corp. may eventually obtain a drilling license for this territory. Corp. has not yet paid WesternGeco or given any security for payment for these studies, though there reportedly is a lengthy agreement with WesternGeco not yet produced by Defendants.

Plaintiff Crosby bought all his stock in Inc. in February 2004. Plaintiff Fattah first bought stock in Ltd. in 2006, after it was listed on the Frankfurt Stock Exchange, and continued to buy stock in Ltd. and PLC until 2008.

Plaintiffs filed their Complaint (Ct. Rec. 1) on July 7, 2009. Soon after, Plaintiffs moved *ex parte* for a Temporary Restraining Order (Ct.

Rec. 2), which the Court granted. (Ct. Rec. 15). That Order expired on September 3, 2009.

## II. Discussion

**A.   Preliminary Injunction Standard**

"A plaintiff seeking a preliminary injunction must establish that 1) he is likely to succeed on the merits, 2) he is likely to suffer irreparable harm in the absence of preliminary relief, 3) the balance of equities tips in his favor, and 4) an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009). "A preliminary injunction is not a preliminary adjudication on the merits: it is an equitable device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH and Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001) (*citing Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)). The decision to grant or deny a preliminary injunction is in the district court's discretion. *Santa Barbara County v. Hickel*, 426 F.2d 164, 168 (9th Cir. 1970), *cert. denied*, 400 U.S. 999 (1971).

**B.   Analysis**

   **1.   Likelihood Irreparable Injury**

Plaintiffs argue that they have shown that they are likely to suffer an irreparable injury because Defendants have transferred assets among their various corporate entities so many times that they are likely to do it again in the future. Alleging the previous actions diluted the value of Plaintiffs' shares, Plaintiffs are concerned they will recover nothing in the event they prevail in this lawsuit.

ORDER ~ 6

The Court finds that Plaintiffs have not demonstrated a likelihood of irreparable harm.  First, the majority of what Plaintiff Fattah seeks by this injunction is information that would be provided in the ordinary course of discovery.  Plaintiffs want to find out which of the corporate Defendants own which assets.  They claim this is necessary because assets and identities have shifted so many times and the stock was delisted from the Frankfurt exchange, so investors no longer know whose stock they own or what it is worth.  This may all be true, but it is all information that Defendants will be required to disclose later in litigation.

Plaintiffs also ask the court to enjoin *all* transfers, not just transfers to corporate entities owned by the individual Defendants. Sophisticated investors such as Plaintiffs know when they buy their shares in a startup that the startup itself has no money.  Investors provide the funds in the hope that their financial assistance will carry the startup's idea to fruition and provide a return. Virtually all the money invested in Corp. and its previous iterations has been spent, allegedly in the preliminary phases of exploration, and Corp. has no cash.  As Plaintiffs recognize, the only significant asset Defendants currently have are the two drilling licenses and one exploratory permit. But even these assets are worthless unless a deal can be struck by Corp. with some other entity that has either the equipment to perform the seismic studies and the drilling or the funds to pay an oil-exploration company to perform them.  Only in this way will they ultimately be able to drill for oil and gas and make a profit for the investors.

In other words, the only way Corp. can make any profit and Plaintiffs can recover from this suit is if it raises all the necessary

funds from investors or enters into agreements that may result in a transfer of some interest in the permit and licenses to a third party. But this is precisely what Plaintiffs ask the Court to forbid Defendants from doing by this injunction. The Court declines to do so. There is at least an equal likelihood that to do so would inflict irreparable harm on the parties. Therefore, the Court finds that the Plaintiffs have failed to prove there is a likelihood of irreparable injury if the Court fails to enjoin Defendants.

### 2. Likelihood of Success on the Merits

The Court finds also that Plaintiffs' probability of success on the merits is in doubt. To begin, Plaintiff Crosby bought all his stock in the corporate Defendants in February 2004. This suit was not filed until July 2009. Claims under the Securities Exchange Act must be brought within either five years of the violation or two years of the discovery of the facts constituting the violation. *See* 28 U.S.C. § 1658(b). Because Crosby did not plead the date he discovered the facts that constitute the alleged violation, it is possible that Crosby's Federal claim will be dismissed because he lacks standing under the statute of repose.

Fattah bought his shares from 2006-2008, and so he does not face the statute-of-limitations problem. Nevertheless, Fattah faces other obstacles. The elements of a securities-fraud claim under § 10(b) are

1)   material misrepresentation or omission;

2)   scienter;

3)   connection to buying or selling a security;

4)   reliance on the misrepresentation or omission;

ORDER ~ 8

    5)   economic loss; and

    6)   a causal connection between the misrepresentation or omission and the loss. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

The essence of Fattah's securities-fraud claim is that he was not informed that the exploratory permits would expire within eighteen (18) months. Fattah's allegations that he put money into an account in Inc.'s name to buy Ltd. stock cannot be a basis for his claim because this occurred after he began to buy stock in 2006, and so he could not have relied on such misrepresentations.

    Although it may be true that Fattah was not informed that the permits would last only eighteen (18) months, this information was publicly available in English on the Israeli Ministry of National Infrastructure's website. In this circuit, a plaintiff in a securities-fraud case must justifiably rely on an omission in order to maintain a claim. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1159 (9th Cir. 1996). A prudent investor could have investigated the site and discovered that the permits would expire in eighteen (18) months. On the current record, the Court cannot say that it is clear that Fattah justifiably relied on any omission.

    Plaintiffs have a total of seventeen (17) other causes of action alleged in their Complaint, but these are all state claims over which this Court does not have jurisdiction absent pendent jurisdiction, which requires one Federal claim. *See* 28 U.S.C. §§ 1331, 1332, 1337, 1367.

    Because the Court has found that Plaintiffs have demonstrated neither a likelihood of irreparable injury nor a likelihood of success

on the merits, it is sufficient to say that on this record the equities are equally balanced and the public interest would not be served by enjoining further acts of this venture.

**C.   Conclusion**

Accordingly, Plaintiffs' Motion is denied insofar as it requests an injunction that includes elements 1) and 3) of their motion: stopping the transfer of assets and requiring Defendants to return the permits and licenses to the proper entity.

The parties agreed in court, however, that element 2) of Plaintiffs' Motion is acceptable to all.  Defendants asserted that the financial records and other documents identifying the location of assets will assist their defense, and so they are as interested in preserving these documents as Plaintiffs are.  The parties stipulated to an agreement only with regard to destroying books, records, accounts, ledgers, computer drives and files, external drives, backup tapes, and server contents, and any other documentation identifying assets, and the Court enters this agreement as part of this Order.

For the reasons given above, **IT IS HEREBY ORDERED:**

1.   Plaintiffs' Motion for Preliminary Injunction **(Ct. Rec. 6)** is **GRANTED AND DENIED IN PART**.

2.   Pursuant to the parties' oral agreement in Court, Defendants are restrained from destroying books, records, accounts, ledgers, computer drives and files, external drives, backup tapes, and server contents, or any other documentation identifying assets.

3.   The remainder of Plaintiffs' Motion for Preliminary Injunction is **DENIED**.

ORDER ~ 10

4. The Clerk of the Court shall not release the bond posted for the Temporary Restraining Order for thirty (30) days from this date to allow Defendants an opportunity to engage in motions practice.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this \_\_\_\_\_4th\_\_\_\_\_ day of September 2009.

                                        S/ Edward F. Shea
                                          EDWARD F. SHEA
                                  United States District Judge

Q:\Civil\2009\5055.PI.wpd

ORDER ~ 11