Michael H. Church
Melody D. Farance
Dianne K. Rudman
Stamper Rubens, P.S.
720 West Boone, Suite 200
Spokane, WA 99201
Attorneys for Plaintiffs
Telephone: (509) 326-4800

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| HOWARD CROSBY; OMAR FATTAH; DONALD LEWIS and CAROL LEWIS, husband and wife; CYNTHIA ROGERS; DAVID SOLOMON; and HENRI MOREAU, | ) ) ) ) ) | NO. CV-09-5055-EFS |
| | ) | |
| | ) ) | FIRST AMENDED COMPLAINT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| PETROMED, INC., a Nevada corporation; PETROMED, LTD., a Canadian corporation; PETROMED, PLC (a/k/a PETROMED, PLC-UK), a United Kingdom corporation; PETROMED CORPORATION, a Belize corporation; HAGAI AMIR and JANE DOE AMIR, husband and wife, d/b/a ABBERLEY INTERNATIONAL, LTD.; RUSSELL KOCH and JANE DOE KOCH, husband and wife, d/b/a ATLANTIQUE CAPITAL GROUP and BOSWELL SYSTEMS CORPORATION; PETROMED CONSORTIUM CORPORATION OF THE BAHAMAS, a Bahamian corporation; LYLE DURHAM and DEBORAH L. DURHAM, husband and wife; THOMAS | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |

FIRST AMENDED COMPLAINT: 1

J. HARRIS, CPA, and JANE DOE
HARRIS, husband and wife; and JOHN
DOES 1 THROUGH 50, INCLUSIVE,

Defendants.

_____

Plaintiffs, Howard Crosby, Omar Fattah, Donald Lewis, Carol Lewis, Cynthia Rogers, David Solomon and Henri Moreau, for causes of action against the Defendants, allege as follows:

## I.    PARTIES

1.1    At all times material hereto, Plaintiff Howard Crosby has resided in the above judicial district.

1.2    At all times material hereto, Plaintiff Omar Fattah has resided in the country of Mexico.

1.3    At all times material hereto, Plaintiffs Donald Lewis and Carol Lewis ("Lewis") have resided in the above judicial district.

1.4    At all times material hereto, Plaintiff Cynthia Rogers has resided in the above judicial district.

1.5    At all times material hereto, Plaintiff David Solomon has resided in the above judicial district.

1.6    At all times material hereto, Plaintiff Henri Moreau has resided in Port Orchard, Washington.

1.7    At all times material hereto, upon information and belief, Defendant

FIRST AMENDED COMPLAINT: 2

PetroMed, Inc. was a Nevada corporation authorized to do business in the state of Washington, and doing business in the above judicial district.

1.8    At all times material hereto, upon information and belief, Defendants Hagai Amir and Jane Doe Amir, husband and wife, d/b/a Abberley International, Ltd. ("Amir"), constituted a marital community residing in British Columbia, Canada.    All acts alleged herein to have been performed by either of said Defendants were performed for and on behalf of said marital community. Plaintiffs are ignorant of the true name of Defendant "Jane Doe" Amir, and for that reason, she is sued under a fictitious name.  Defendants Amir conduct and transact business under the assumed name of Abberley International, Ltd.

1.9    At all times material hereto, upon information and belief, Defendants Russell Koch and Jane Doe Koch, husband and wife, d/b/a Atlantique Capital Group and/or Boswell Systems Corporation ("Koch"), constituted a marital community residing in King County, Washington.  All acts alleged herein to have been performed by either of said Defendants were performed for and on behalf of said marital community.  Plaintiffs are ignorant of the true name of Defendant "Jane Doe" Koch, and for that reason, she is sued under a fictitious name. Defendants Koch conduct and transact business under the assumed name of Atlantique Capital Group and also Boswell Systems Corporation.

FIRST AMENDED COMPLAINT: 3

1.10  At all times material hereto, upon information and belief, Defendant PetroMed, Ltd. was and now is an Ontario, Canada corporation. Defendants have alleged that PetroMed, Ltd. is merely a continuation and/or successor of PetroMed, Inc., with the same executives/representatives, assets, and shareholders.

1.11  At all times material hereto, upon information and belief, Defendant PetroMed, PLC (a/k/a PetroMed, PLC-UK) was and now is a foreign corporation. Defendants have alleged that PetroMed, PLC was merely a continuation and/or successor of PetroMed, Ltd. and PetroMed, Inc, with the same executives/representatives, assets, and shareholders.

1.12  At all times material hereto, upon information and belief, Defendant PetroMed Corporation was and now is a foreign corporation. Defendants have alleged that PetroMed Corporation was merely a continuation and/or successor of PetroMed, PLC, PetroMed, Ltd., and PetroMed, Inc., with the same executives/representatives, assets, and shareholders.

1.13  At all times herein material, upon information and belief, Defendant Petromed Consortium Corporation of the Bahamas was and now is a foreign corporation, and may be a successor corporation to PetroMed, PLC, PetroMed Ltd., and PetroMed, Inc.

1.14  At all times herein pertinent, upon information and belief, Defendants

FIRST AMENDED COMPLAINT: 4

Lyle Durham and Deborah L. Durham, husband and wife ("Durham") constituted a marital community residing in King County, Washington.  All acts alleged herein to have been performed by either of said Defendants were performed for and on behalf of said marital community.

1.15   At all times herein pertinent, upon information and belief, Defendants Thomas J. Harris, CPA and Jane Doe Harris, husband and wife, ("Harris") constituted a marital community residing in King County, Washington.  All acts alleged herein to have been performed by either of said Defendants were performed for and on behalf of said marital community.  Plaintiffs are ignorant of the true name of Defendant "Jane Doe" Harris, and for that reason she is sued under a fictitious name.

1.16   John Does 1 through 50 inclusive are, upon information and belief, former and current officers, directors, and/or speaking agents of the PetroMed entities, including but not limited to PetroMed, Inc. and/or PetroMed, Ltd. and/or PetroMed PLC and/or PetroMed Corporation and/or PetroMed Consortium Corporation of the Bahamas.

1.17   For ease of reference and because the Defendants have alleged that all PetroMed entities are one and the same, the various PetroMed entities are collectively referred to as "the Company," unless otherwise necessary to refer to

them by their individual names.

## II.    JURISDICTION AND VENUE

2.1    This action arises under the Securities Exchange Act of 1934 ("Exchange Act"), Section 10(b), [codified at 15 U.S.C. § 78j and at 15 U.S.C, 78r as to Defendant Harris)] and SEC Rule 10b-5 [17 CFR § 270.10b-5 (2004)], and the Securities Act of 1933 [codified at 15 U.S.C. 77a, *et seq*.], and the laws of the State of Washington.  Plaintiffs seek to recover damages sustained as a result of Defendants' conduct, along with the costs of this suit, interest, and reasonable attorney's fees.  The Court's jurisdiction is invoked under 28 U.S.C. §§ 1331, 1332, 1337, and 1367, the Securities Exchange Act of 1934, § 27; 15 U.S.C. § 78aa, the Securities Act of 1933, 15 U.S.C. § 77a, and the doctrine of pendent jurisdiction.

2.2    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

2.3    The Defendants are subject to the personal jurisdiction of this Court under Fed. R.Civ. P. Rule 4(e) and under the nationwide service of process provisions of 15 U.S.C. § 78aa.

2.4    At all times material hereto, the Company, and/or the individual PetroMed entities, through its representatives and the individual Defendants,

FIRST AMENDED COMPLAINT: 6

solicited and obtained investments from United States and Washington State residents, including those of this judicial district, through personal meetings in this judicial district, telephone, mail, e-mail, Internet, written materials, and public statements.

2.5    The Company, and/or the individual PetroMed entities, has issued millions of shares of stock to United States and Washington State residents, and more specifically, to residents of this judicial district.   Amir signed the share certificates.

2.6    At all times material hereto, the Company, and/or the individual PetroMed entities, through its representatives and the individual Defendants, provided numerous updates on the status of the Company to its United States shareholders, including those of this judicial district, through personal meetings, telephone, mail, e-mail, the Internet, written materials, and public statements.

2.7    At all times material hereto, the Company, and/or the individual PetroMed entities, has conducted business in the United States.   The Company, through its representatives, and the individual Defendants, have had sufficient contacts with the United States and with this judicial district.

2.8    Venue is proper in this District under 28 U.S.C. § 1391 (b) and 9 (c). A substantial part of the events and conduct giving rise to the violations of law

FIRST AMENDED COMPLAINT: 7

complained of herein occurred in or emanated from this judicial district.   In addition, it is believed that Defendants continue to conduct regular business with consumers in this judicial district.

### III.   FACTS

### THE "COMPANY":

3.1    It is alleged by Defendants (a position not adopted by the Plaintiffs) that PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, and PetroMed Corp., are one in the same.  Thus, for purposes of identification only, the PetroMed entities shall be collectively referred to herein as "the Company," or individually, where necessary.

3.2    As represented by the Defendants, the Company was incorporated on November 16, 2000, under the laws of the State of Nevada as Kelsey Environmental Technologies.  According to the Company, the corporation was dormant until July 25, 2003, at which time it began operations and changed its name to PetroMed, Inc.

3.3    Based on varying Company information, the Company was founded in either 1999, 2000, 2001, or 2003.

3.4    Upon further information and belief, PetroMed, Inc. of Nevada was acquired by Linux, Inc. of Ontario, Canada in December of 2005.  The name of the

FIRST AMENDED COMPLAINT: 8

corporation was later changed to PetroMed, Ltd. and sold its assets to a United Kingdom company called Raddichio PLC. The name of Raddichio PLC was later changed to PetroMed PLC.

3.5    Defendants Amir and Durham were listed as officers and directors of PetroMed, Ltd., and Russell Koch was the secretary and an agent of PetroMed, Ltd.

3.6    The Defendants have represented that PetroMed, PLC became domiciled in Belize as a "corporate continuation" and changed its name to PetroMed Corporation on September 7, 2007.

3.7    The Defendants have represented that each time the Company changed its name it was a mere continuation of the prior named entity, with the same purpose, and same officers and representatives.

3.8    The Defendants have represented that each time the Company changed its name it provided for, or promised to provide for, the transfer of every shareholder's investment in the various PetroMed entities to the new entity, on a share-for-share basis. Stock certificates to reflect this were not issued in every case, however.

3.9    Upon information and belief, at all times material hereto, Durham is and has been an officer and director of the Company and a person of control.

FIRST AMENDED COMPLAINT: 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34

3.10   Koch and the Company held Koch out to be, at various times, an officer, controller, director, and operator of PetroMed, Inc. and the multiple other PetroMed entities named as Defendants herein.

3.11   Upon information and belief, Koch was and is an individual in control of the Company. Koch has been involved in extensive activities as a promoter of the Company, and was designated as its contact person in Company reports and statements to the press. Koch has submitted numerous statements to the press in a representative capacity for the Company.

3.12   Amir is the President and Chief Executive Officer of the Company. Amir and the Company have represented that Amir is the President and Chief Executive Officer of the Company in numerous press releases, on the Company Website, in internal documents, and in shareholder updates in multiple media since the Company's inception. Amir is a person of control for the Company.

3.13   Upon information and belief, Koch and Amir submitted an application for four initial "exploration permits" for areas off the shore of Israel to the Ministry of National Infrastructures, Oil & Gas Explorations & Licensing Division, Jerusalem, Israel on or about March 30, 2006. All funds expended for said permits were raised from shareholders of PetroMed, Inc.

3.14   Amir submitted the application for "exploration permits" to the Israeli

government under the name "PetroMed, Ltd." This application was filed without notice to or approval of PetroMed, Inc.'s shareholders, who had incurred one hundred percent of the costs and expenses associated with the permit application process.

3.15  On or about July 16, 2006, the Ministry of National Infrastructures granted preemption rights and preliminary permits in the name of PetroMed, Ltd. As a result, all shares in PetroMed, Inc. no longer had any value.

3.16  Upon information and belief, the individual Defendants carried out a manipulative and/or deceptive scheme or device of transferring Company assets between newly-formed and newly-domiciled PetroMed entities, resulting in the dilution in value of the shares, as follows:

> a.    The individual Defendants located a dormant United Kingdom company, Raddichio, PLC, and on May 26, 2006 changed its name to PetroMed, PLC.    Said Defendants represented to existing Company shareholders that their ownership interests were to merge with the new entity as a share-for-share exchange with the same nominal ownership. The share-for-share exchange never occurred. Amir and Durham were named directors in PetroMed, PLC.

> b.    PetroMed, PLC then agreed to issue to PetroMed, Ltd.

25,142,427 shares of PetroMed, PLC in exchange for the exclusive exploratory permits issued to PetroMed, Ltd., pursuant to an asset purchase agreement, under the direction and approval of director Lyle Durham.

c.      Because PetroMed, PLC's issued and outstanding shares totaled 56,641,777 as of September 20, 2006, PetroMed, Ltd.'s shareholders (who on information and belief consist of the named individual Defendants) now owned almost one-half of PetroMed, PLC's stock, having paid no consideration for the same.

d.      On August 4, 2006, PetroMed, Inc., without any shareholder notice or approval, agreed to enter into a share exchange agreement with PetroMed, PLC.   PetroMed, PLC agreed to issue 17,137,750 shares to PetroMed, Inc. (which number equaled the total issued and outstanding shares of PetroMed, Inc.) for no consideration.

3.17  Since PetroMed, PLC's total issued and outstanding shares were 56,641,777, the share exchange with PetroMed, Inc. resulted in a 69.75% dilution in share ownership of PetroMed, Inc.'s stock.

3.18  Subsequently, on January 18, 2007, the board of directors of PetroMed, PLC (consisting of Koch, Amir, and John Gillespie) adopted a resolution transferring the Israeli exploratory permits to Defendant PetroMed

FIRST AMENDED COMPLAINT: 12

Consortium Corporation of the Bahamas or some other PetroMed entity, again for no consideration and without shareholder notice or approval.

3.19   On February 9, 2007, Koch, signing as president of PetroMed Consortium Corporation of the Bahamas, granted all exclusive exploratory rights (by deed) to Altmark Holdings, Ltd., a foreign entity.

3.20   In January 2008, the exploratory permits expired. The Defendants failed to explain to shareholders and investors that the permit was effective for only eighteen months, upon which the company receiving the permit must apply for drilling licenses.   The drilling licenses, upon information and belief, are effective for up to seven years.

3.21   The Company has alleged that one additional exploration permit and two drilling licenses were granted to the Company by the Ministry of Infrastructures in mid-2008.

3.22   Upon information and belief, on or about May 5, 2008, the Company, through Defendant Thomas J. Harris, CPA, completed audited financials for the years 2003 ("inception") through 2007. Upon information and belief, those "Financial Statements" were distributed to the Company shareholders and used for the purpose of supplying information for prospective investors.

## THE PLAINTIFFS/INVESTORS:

HOWARD CROSBY:

3.23    In early 2004, Defendant Koch telephoned Plaintiff Howard Crosby, in this judicial district, and solicited an investment in PetroMed, Inc.

3.24    Koch represented to Crosby that PetroMed, Inc. was a private startup company involved in the exploration of oil and gas off the coast of Israel, and needed an influx of capital to enable the company to contract with Columbia Basin Energy Corporation, a geophysics consultant. Koch represented the ultimate goal was to secure oil and gas permits from and within the country of Israel.

3.25    In about April of 2004, after numerous subsequent telephone discussions with Koch, Howard Crosby invested $35,000 in PetroMed, Inc. In exchange for his investment, Howard Crosby was issued 500,000 shares of stock in PetroMed, Inc.

3.26    For at least six months following Crosby's investment in April 2004, Koch telephoned Crosby every two weeks to solicit an additional investment.

3.27    During these multiple conversations, which took place through approximately September or October of 2004, Koch repeatedly represented to Crosby that the Company had obtained the necessary permits from the government of Israel to conduct the required seismic testing that must precede any actual

FIRST AMENDED COMPLAINT: 14

offshore drilling.

3.28    During these multiple bi-weekly telephone calls, Koch also represented to Crosby that obtaining the necessary funding to conduct the seismic testing and drilling would not be difficult. Koch stated that companies would be fighting to put up the capital and to partner with PetroMed on the drilling project.

3.29    Some time between June 2004 and September of 2004, Koch and Durham traveled to the Tri-Cities, Washington area to meet with Crosby. During that meeting, Koch and Durham again represented that permits had been obtained for the initial testing and assured Crosby of the imminent success of the drilling project.

3.30    During their initial and continued contact through September of 2004, Koch materially misrepresented to Crosby that the necessary exploration permits were already in place. Crosby reasonably relied upon this representation in making the decision to invest in PetroMed. The representation was a critical factor in Crosby's evaluation of the potential for success in finding oil off the coast of Israel, and in his evaluation of the time frame necessary to begin drilling.

3.31    The repeated representations by Koch that the company was poised for exploration, had the necessary permits, and that the necessary funding would be easily obtained, made through September or October 2004, was a continuation of

FIRST AMENDED COMPLAINT: 15

the material misrepresentations perpetrated upon Crosby. All said misrepresentations were made in connection with the purchase and sale of securities.

3.32    Each contact by Koch and Amir and/or the Company with Solomon was "in connection with" the purchase and sale of securities.

DONALD AND CAROL LEWIS:

3.33    In or about the spring of 2004, Russell Koch began soliciting investments from Plaintiffs Lewis in this judicial district. For the next three years, Koch and Lewis engaged in multiple telephone conversations and had extensive e-mail contact, sometimes on a daily basis and/or multiple times per day. In addition to telephone and e-mail contact, Koch met with Lewis in Lewis's home in Spokane with multiple other investors, and again at Koch's home in Seattle.

3.34    Based upon repeated representations that this was a sound investment, Lewis began making a series of investments into the Company. Between July 29, 2004 and February 16, 2007, Lewis made at least twelve separate investments in the Company, totaling in excess of $123,000, for which he received over 1 million shares. This represented Lewis' entire life savings.

3.35    Lewis made investments in PetroMed, Inc., PetroMed, PLC, and PetroMed Corp., but he never knew what company he was investing in and he was

FIRST AMENDED COMPLAINT: 16

never informed that there were multiple PetroMed entities. At no time did Lewis ever attempt to understand or differentiate between the various companies as he was not aware that this was an issue.

3.36    Several of the Lewis's investments were made as gifts for their children. The stock certificates were purchased in their children's names, including Cynthia Rogers, Tamara Sorokin, and Terry Lewis. Most of the certificates were signed by Amir.

3.37    Each time Lewis invested, Koch instructed Lewis to make his check out to Atlantique Capital Group and mail it to Koch's address in Sammamish, Washington.

3.38    Lewis has been issued stock certificates in PetroMed, Inc., PetroMed, PLC, and PetroMed Corp. However, the number of shares invested are not reflected on a share-for-share basis from one entity to the next.

3.39    Prior to and during the period of time that Lewis made the above-described investments, Koch and Lewis had numerous telephone conversations and exchanged numerous e-mails in which Koch repeatedly represented to Lewis that the stock would be publicly traded, that trading was imminent, and that the starting price would be 5 Euros.

3.40    Koch made these representations to Lewis via e-mail and telephone

FIRST AMENDED COMPLAINT: 17

for the purpose of inducing Lewis to invest and assuring Lewis that he would realize a return on his investment as soon as public trading on the stock market, which Koch represented was imminent, began.

3.41    Each of these contacts and each representation made by Koch and/or the Company was "in connection with" the purchase and sale of securities.

3.42    Prior to and during the period of time that Lewis made the above-described investments, Durham also contacted Lewis, by e-mail and telephone, and made similar representations to Lewis as those made Koch.

3.43    Each contact by Koch and Amir and/or the Company with Solomon was "in connection with" the purchase and sale of securities.

DAVID SOLOMON:

3.44    In mid December 2003, David Solomon contacted Koch, upon the recommendation of Koch's father, to inquire about investment opportunities in the Company.    Koch represented to Solomon, during their initial telephone conversation, that the Company stock would be listed on a public stock exchange in February 2006 for $5 to $7 per share.    Koch also suggested Solomon inform other potential investors of the opportunity, and stated that the investment opportunity would be available for only a few days.

3.45    Russell Koch represented to Solomon that he was a director of

FIRST AMENDED COMPLAINT: 18

PetroMed and a promoter.

3.46    Between late 2005 to mid-2008, Solomon and Koch exchanged numerous e-mails, spoke by telephone phone three to eight more times, and met in person on one occasion.

3.47    Solomon told Koch that he would invest in the Company only if Koch was certain the Company would go public in February of 2006.    Koch assured Solomon that it would and Solomon decided to invest in PetroMed based upon the representations by Koch.

3.48    Solomon told Koch he would have to borrow the funds in order to invest in the Company.    Soloman also told Koch that he planned topay off the loan in February of 2006, when the Company went public.    On this basis, Solomon made it very clear to Koch that he was not a "long-term investor."    Koch represented to Soloman that the stock would be publicly-trading by February with the opening price at 5 Euros.

3.49    On or about December 22, 2005, Solomon invested $25,000 in the Company, for which he received 50,000 shares in PetroMed, Inc.    Soloman was instructed by Koch to make his check payable to Atlantique Capital Group.    Soloman mailed the check to Koch at his Sammamish, Washington address, per Koch's instructions.

FIRST AMENDED COMPLAINT:  19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34

3.50    In or about the third week of January of 2006, Solomon received a stock certificate issued on January 10, 2006 by PetroMed, Inc.

3.51    In or about May of 2008, Solomon received a stock certificate for 50,000 shares in PetroMed, PLC, issued on April 18, 2008.

3.52    Solomon has not received any other stock certificates from the Company.

3.53    During Solomon's numerous contacts with Koch, Koch repeatedly delayed the anticipated date when public trading would commence, while repeatedly assuring Solomon that public trading would take place.

3.54    Koch ceased responding to all emails and phone messages sent or left by Solomon in or about mid-2008.

3.55    In or about November 2008, Solomon had a telephone conversation with Amir, who represented that he was the President of PetroMed. During that conversation, Amir assured Solomon that the Company was continuing to do everything necessary to proceed with exploration and drilling was on schedule.

3.56    Based upon the representations and repeated assurances of Koch and Amir, as well as the public statements of the Company, Solomon decided to make a short-term investment in the Company. Based on the repeated representations and assurances made by Koch and Amir subsequent to Solomon's investment,

FIRST AMENDED COMPLAINT:  20

Solomon understood he would be able to realize a return on his investment "imminently."

3.57    Each contact by Koch and Amir and/or the Company with Solomon was "in connection with" the purchase and sale of securities.

HENRI MOREAU:

3.58    In late 2005, Moreau had multiple telephone conversations and e-mail exchanges with Koch, in which Koch solicited Moreau to make an investment in the Company.

3.59    On December 22, 2005, Moreau invested $25,000, for which he received 50,000 shares of stock.   Koch represented to Moreau that he would be investing in PetroMed, Inc.

3.60    Moreau was instructed by Koch to make the check payable to Atlantique Capital Group.

3.61    The first stock certificate was issued by PetroMed, Inc. on January 10, 2006.

3.62    Moreau was issued a second stock certificate on August 14, 2006, for 50,000 shares of common stock in PetroMed, PLC.

3.63    Without notice or explanation, Moreau was issued a third stock certificate on April 18, 2008 for 50,000 shares of common stock in PetroMed

Corp.

3.64    Moreau    invested    in    the    Company    based    upon    the    repeated representations by Koch that the stock was about to go public and would be immediately trading for 5 Euros.  Koch also repeatedly represented to Moreau that the Company continued to make successful progress in the development of oil off the coast of Israel.  These representations were supported by the reports made by the Company on its Website.

3.65    Subsequent to Moreau's initial investment, the Company issued periodic newsletters representing that the project was progressing, for the purpose of instilling confidence in the investment.

3.66    Each contact by Koch and Amir and/or the Company with Solomon was "in connection with" the purchase and sale of securities.

CYNTHIA ROGERS

3.67    Cynthia Rogers is the daughter of Donald and Carol Lewis.  She is a shareholder in PetroMed stock by virtue of a gift of shares from her parents. Rogers has stock certificates issued as follows:  20,000 shares in PetroMed, Inc, issued on September 12, 2005; 20,000 shares in PetroMed, PLC issued on August 15, 2006; and 15,000 shares in PetroMed, PLC issued on February 16, 2007.

3.68    Rogers met with Koch in Spokane in June 2006.  Koch represented

that public trading of the Company stock was to begin on June 20, 2006. Koch further represented that stock would open at 5 Euros and would be trading at 50 Euros very soon thereafter.

3.69   Each contact by Koch and Amir and/or the Company with Solomon was "in connection with" the purchase and sale of securities.

OMAR FATTAH:

3.70   In about August or September 2006, Russell Koch began soliciting investments from Plaintiff Omar Fattah.  Koch and Fattah engaged in multiple telephone conversations and had extensive email contact.

3.71   After February of 2008, Omar Fattah also began communicating with Amir by telephone and by email.

3.72   All financial and documentary transactions and communications for Fattah's purchase of stock took place between Fattah and Erika Larsson, who worked as an agent for the Company to recruit investors.

3.73   Fattah reasonably relied upon direct representations made to him by Koch and Hagai in making his investment decisions.   Additionally, Fattah reasonably relied upon information disseminated by the Company in the form of press releases, shareholder updates, prospectuses or prospectus-type information, financial audits, and other information relayed to Erika Larsson by PetroMed

FIRST AMENDED COMPLAINT:  23

officials.

3.74    In information relayed by the Company and its agents and/or representatives, key and material facts regarding the Company's current status were repeatedly misrepresented and overstated, as follows:

a.    The status of Company funding. Specifically, Company agents and representatives repeatedly stated that sufficient investments to fund all operations for the next year, two years, or up to the point when actually drilling could commence was either secured or would imminently be secured.

b.    The status of issuance of a bond offering. Specifically, the Company agents and representatives repeatedly stated that a bond offering valued at $450 million was either complete or imminent, and that the offering would fund the operations fully up to the drilling stage.

c.    The status of marketability of Company shares. Specifically, Koch told Fattah in August or September of 2006 that the Company stock was currently trading for six Euros and that Fattah could purchase stock for $1.00 per share that would be restricted from trading for one year. Based on this representation, Fattah determined

it would be a good investment and he purchased 125,000 shares of stock for $125,000. To date, these shares or their supposed replacements in substitute companies, remain restricted from trading.

d.      Misrepresentations as to the status of the placement or existence of Company stock on various exchanges.

e.      Misrepresentations as to the status of oil exploration.

f.      The status of procuring the necessary ships for 3-D seismic work. Specifically, Russell Koch solicited additional funds from Fattah in August 2007, and represented that if Fattah would contribute $100,000 there would be sufficient funds to immediately secure the ship for 3-D seismic work. Based on these representations, Fattah invested an additional $100,000 on August 19, 2007. As of the date of filing this lawsuit, the 3-D seismic boat had not yet been secured.

g.      The status of exploration. Specifically, the Company consistently provided information to the shareholders, either directly, or through press releases, or prospectuses or prospectus-type literature, that the drilling process was imminent.

h.      The Company's expenses for administrative costs, including salaries and company travel. Specifically, the Company has never

FIRST AMENDED COMPLAINT: 25

disclosed that Company funds were transferred to personal off-shore accounts for the benefit of certain individual Defendants. Moreover, Koch and Amir have affirmatively represented that they "have not taken a dime out of the company."

i.    Misrepresentations as to the amounts spent by the Company on seismic and exploration expenses.

h.    Misrepresentations as to the true financial condition of the Company.

i.    Whether the Company had been involved in previous litigation. In July of 2007, Koch assured Fattah that the Company had never been sued. However, subsequent to his investments in the Company, Fattah learned that the Company and Defendants Koch and Amir were sued by Roland E. "Sandy" and Dianna Wheeler for breach of contract regarding their investment in PetroMed. The suit was filed on September 13, 2006 in Chelan County Superior Court.

3.75    In addition to the above-stated misrepresentations and misleading statements, the Defendants also omitted certain key information that would be material to an investor in making a decision whether to invest in a company, particularly where inherent risks must be weighed in making an informed decision.

FIRST AMENDED COMPLAINT: 26

3.76   As a direct result of conversations and emails with Koch, and in reliance upon the representations and promises made therein, as well as in reliance upon written materials, press releases, financial documents, shareholder updates, prospectuses or prospectus-like material, Omar Fattah began to invest in PetroMed stock.

3.77   Fattah made his initial investment of $125,000 on October 19, 2006. At the time of this initial investment, Fattah was told he was investing in PetroMed, PLC, which he was advised was trading at six Euros. At no time during this initial phase was Fattah told there were multiple PetroMed entities. Fattah was not made aware he would be investing in any other entity besides PetroMed, PLC. The subscription agreement (hereinafter "Stock Investment Agreement(s)") for this initial investment was in the name of PetroMed, Inc. He was instructed to wire the funds to an account that is understood to be in the name of PetroMed. Inc.

3.78   On December 8, 2006, Fattah invested an additional $100,000 in PetroMed, Inc. and a further $50,000 on April 17, 2007 (funds wired to same Inc. account).   Fattah's decision to make both of these investments was based on repeated e-mails and conversations with Koch and/or review of information disseminated by the Company, each containing representations that are now known to have been false or misleading.

3.79   Koch solicited additional funds from Omar Fattah in August of 2007.
Koch promised that if Fattah would contribute $100,000, there would be sufficient
funds to secure a ship for the 3-D seismic work.   Based on these representations,
Fattah invested an additional $100,000 on August 19, 2007.   The funds were,
again, wired to PetroMed, Inc.'s account. In exchange for his $100,000 investment,
Fattah received a promissory note that was convertible for an additional 100,000
PetroMed shares. The promissory note bears the address for PetroMed Ltd.,
references PetroMed Corporation, and bears the seal of PetroMed PLC.  On April
29, 2009, Omar Fattah called this promissory note.  To date, he has not been paid,
nor has he received any communication from Company officials regarding this
demand.

3.80   In December of 2007, Koch represented to Fattah that the bond
offering was finally complete and trading on the Frankfurt stock exchange (DAX).

3.81   On March 28, 2008, Omar Fattah invested $20,000 in PetroMed
Corporation.  Fattah invested an additional $20,000 in PetroMed Corporation on
April 15, 2008.  He invested an additional $20,000 in PetroMed Corporation on
July 10, 2008. As to each investment, Fattah reasonably relied upon the continued
statements and representations made by the Company, through its agents and
representatives, either directly, or indirectly, through mails and e-mails, press

releases, meetings, phone calls and/or other information disseminated by the Company. As to each investment, Koch instructed Fattah to send the funds to the PetroMed PLC account, even though the investment was to be in PetroMed Corp.

3.82 Defendant PetroMed, Inc. represented to Fattah that it was necessary to raise millions of dollars through investors, and also obtain outside financing in order to apply for exploratory permits off the coast of Israel. PetroMed, Inc. claimed to have expended substantial funds on geological experts, seismic data, and studies and mapping of potential drilling sites to identify the presence of hydrocarbons.

3.83 Instead of using the funds as represented, Defendants used the funds for the personal benefit of Koch and his companies, Atlantique Capital Group and Boswell Systems Corporation, and for Amir and his company, Abberley International, Ltd.

3.84 In February 2008, Fattah met with Koch and Amir to discuss the issues of unfulfilled promises, lack of any meaningful results, and poor communication, as well as the fact that the company's only asset, the exploration permits, had expired in January 2008. One of the concerns expressed to the Defendants was that there had been no communication at all to inform shareholders that the permits were for 18 months only and that a new procedure to

FIRST AMENDED COMPLAINT: 29

apply for a drilling license was necessary. There had been no communication of the possible risk of not obtaining the drilling licenses. During this meeting Defendants Koch and Amir claimed they needed more funds to go to Israel to negotiate with potential partners and prepare for the drill license application. However, upon information and belief, it is believed that Defendants Koch and Amir did not go to Israel. Nevertheless, the licenses were issued to PetroMed Corporation, although the exploration permits were issued to PetroMed Ltd.

3.85    At the meeting with Koch and Amir in February of 2008, Koch and Amir disclosed that they were doing a 50:1 reverse stock split in PetroMed, PLC and would issue new shares in PetroMed Corporation equivalent to $1.00 per share. This action, they said, was to limit the number of new shares that had been issued, after discovering that a former consultant of the Company had issued unauthorized shares to himself. Although Koch and Amir represented that the new shares would be tradeable, the stock was not electronically trading at that time.

3.86    Fattah subsequently learned that the market maker in Germany had the stock de-listed from the DAX in the summer of 2008, due to the Company's failure to make full disclosures.

3.87    On information and belief, the investment funds collected by Atlantique Capital Group (Koch's personal company) from shareholders investing

in the Company was not deposited into Company accounts.

3.88   Based upon the totality of these circumstances, the Defendants knew, or were reckless in not knowing, that certain statements made in connection with the sales of Company securities were false and/or misleading and knew or were reckless in not knowing that the acts, practices, course of business, devices and or schemes engaged in worked a fraud against the Plaintiffs.

3.89   The Company either represented to potential investors that the stock issued would be unrestricted, or represented that if the stock was restricted, the restrictions would be lifted after a short period of time.   This was either a direct misrepresentation or a material omission, as the restriction on selling Company shares has not been lifted.

3.90   Thomas Harris, CPA, prepared the audited financial statements that were used to entice investors into the Company's fraudulent scheme.

3.91   Harris provided information that was material and false or omitted information that was material.

3.92   Harris knew, or was reckless in not knowing, that the information that was the basis for the financial statements was false.

3.93   Harris knew, or was reckless in not knowing, that the information provided in the financial statements would be relied upon by investors, potential

FIRST AMENDED COMPLAINT: 31

investors, and shareholders, including the Plaintiffs.

3.94   The Plaintiffs have been damaged as a result of Harris's actions.

3.95   As to any named individual Defendant who is or has been a corporate officer/director of one or more of the PetroMed entities, said officer(s)/director(s) have continuously and repeatedly engaged in fraudulent or dishonest acts or gross abuse of authority or discretion, as more particularly detailed in the foregoing paragraphs.

3.96   Said officers/directors have engaged in the conduct described above to the detriment of the Company and its shareholders.

3.97   Plaintiffs are informed and believe and allege on information and belief that said officers'/directors' conduct will continue if allowed to remain and/or be re-appointed to the board of directors.

## IV.   FIRST CAUSE OF ACTION –VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10b-5 / SECURITIES ACT OF 1933

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas, and John Does 1-50)

4.1   Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

4.2   Defendants directly or indirectly, singly or in concert, by use of the

FIRST AMENDED COMPLAINT: 32

means of instrumentality of interstate commerce, or by use of the mails, or of the facilities of the national securities exchange, in connection with the purchase and sale of securities, knowingly or recklessly, have (a) employed manipulative or deceptive devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which operated or would have operated as fraud or deceit upon purchases of securities upon other persons.

4.3    As part of and in furtherance of the fraudulent scheme and other violative conduct described above, Defendants, directly or indirectly, singly or in concert, knowingly or recklessly, engaged in and/or employed fraudulent and manipulative or deceptive devices, schemes and artifices, contrivances, acts, transactions, practices and courses of business and/or made the misrepresentations and/or omitted to state the facts alleged above in paragraphs 3.1 through 3.97.

4.4    The false and misleading statements and omissions made by the Defendants, as more fully described above in paragraphs 3.1 through 3.97, were material.

4.5    Defendants knew or were reckless in not knowing that these material

FIRST AMENDED COMPLAINT: 33

misrepresentations or omissions, more fully described above in paragraphs 3.1 through 3.97, were false and/or misleading and the Defendants also acted with the requisite scienter by knowingly or recklessly engaging in the fraudulent scheme and other misconduct described above in paragraphs 3.1 through 3.97.

4.6.    The material misrepresentations, misleading statements and/or omissions were in connection with the purchase or sale of a security.

4.7    The Plaintiffs reasonably relied on the material misrepresentations, misleading statements and/or omissions and have suffered economic loss as a direct result in an amount to be proven at trial.

4.8    By reason of the foregoing, Defendants, singly or in concert, directly or indirectly, have each violated, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. 78j(b)] [and 15 U.S.C. 78r (re: Harris)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and the Securities Act of 1933 [15 U.S.C. 77a et.seq.].

4.9    By reason of the foregoing and pursuant to the Exchange Act, Defendants also aided and abetted, and are therefore also liable for, each others primary violations, because they each knowingly provided substantial assistance to such other Defendants' violations of the statutes and rules delineated above.

FIRST AMENDED COMPLAINT: 34

## V.    SECOND CAUSE OF ACTION – VIOLATIONS OF SECTION 15 OF THE SECURITIES EXCHANGE ACT OF 1934 AND SECTION 20(a) OF THE SECURITIES ACT OF 1933 – CONTROL PERSON LIABILITY

(Amir, Koch, Durham)

5.1    Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

5.2    The previous allegations set forth that the Defendants have committed primary violations of the Securities Exchange Act of 1934 and the Securities Act of 1933.

5.3    As part of the misconduct set-forth herein, the individual Defendants each exercised control over the general operations of the primary violator of the securities acts complained of **and/or** possessed – but did not necessarily exercise – the power to determine the specific acts or omissions complained of upon which the underlying violations the securities acts are predicated. .

## VI.    THIRD CAUSE OF ACTION –VIOLATIONS OF SECTION 12(a) OF THE SECURITIES ACT OF 1933

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas, and John Does 1-50)

6.1    Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

6.2    Defendants directly or indirectly, singly or in concert, by use of the

FIRST AMENDED COMPLAINT: 35

means of instrumentality of interstate commerce, or by use of the mails, and by use or means of a prospectus and/or oral communication, in connection an offer to sell a security, made untrue statements of material facts and/or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.

6.3    By reason of the foregoing, Defendants, singly or in concert, directly or indirectly, have each violated, Section 12(a) of the Securities Act of 1933 [15 U.S.C. 77l.]

## VII.   FOURTH CAUSE OF ACTION – CRIMINAL PROFITEERING

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas, and John Does 1-50)

7.1    Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

7.2    As part of the misconduct set-forth herein, Defendants initiated the perpetration of a pattern of criminal profiteering activity by engaging in repeated and systematic acts in violation of RCW 9A.82.010 et seq.

7.3    Defendants committed the acts alleged herein for financial gain and, accordingly, said acts constitute criminal profiteering.

7.4    Defendants' conduct as described herein was a direct violation of RCW 9A.82.010, et seq. and constitutes criminal profiteering, which has damaged Plaintiffs in amounts to be proven at the time of trial.

7.5    In addition to actual damages, Plaintiffs have also incurred substantial fees in investigating and discovery of the number of misdeeds committed by the Defendants.

## VIII. FIFTH CAUSE OF ACTION – CIVIL CONSPIRACY

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas, and John Does 1-50)

8.1    Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

8.2    Defendants entered into an agreement between themselves to conspire to, among other things, deprive Plaintiffs of their property by inducing Plaintiffs to make the investments as stated herein which was unlawful and/or was accomplished by unlawful means. As a result of Defendants' actions, Defendants, were enriched to the detriment of Plaintiffs' financial interests.

8.3    Defendants have conspired and acted, as set forth above, pursuant to the conspiracy, willfully, deliberately and with specific intent to injure Plaintiffs. Such actions were unlawful and/or were accomplished by unlawful means. By

FIRST AMENDED COMPLAINT: 37

reason of Defendants' action, Plaintiffs, and each of them, are entitled to damages from Defendants.  Defendants, as co-conspirators, are jointly and severally liable to Plaintiffs, and to each of them, for the damages sustained by Plaintiffs as a result of Defendants' action.

### IX.    SIXTH CAUSE OF ACTION – ESTOPPEL BY MISREPRESENTATION

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas, and John Does 1-50)

9.1    Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

9.2    Plaintiffs in good faith reasonably relied upon Defendants' representations.  The Plaintiffs were enticed into investing in Defendants' company based on representations made by Defendants.

9.3    Defendants led Plaintiffs to believe that they would have long-term relationships with Defendants with the promise of financial gain and in reasonable reliance of those representations, Plaintiffs began fulfilling their obligations as investors/shareholders to the various PetroMed entities.

9.4    Plaintiffs were damaged as a result of their reasonable reliance on the Defendants' misrepresentations.

9.5    Defendants are estopped by their misrepresentations from denying

Plaintiffs the benefit of their agreement.

## X. SEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT

(Amir, Koch, Durham, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas and John Does 1-50)

10.1   Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

10.2   Plaintiffs are entitled to the benefit of the PetroMed assets.

10.3   The assets in which the Plaintiffs maintain an interest by way of their investments in the various PetroMed entities are implied in law.

10.4   Defendants have profited and/or benefited from the Plaintiffs' investments into the companies and such profit or benefit is unjust.

10.5   Defendants were clearly aware of the profits and/or benefits conferred upon them by the Plaintiffs.

10.6   Defendants' retention of the benefits/profits/assets conferred upon them and/or acquired by them would be inequitable and/or unjust without Defendants paying for the same.

## XI.    EIGHTH CAUSE OF ACTION – VIOLATION OF OFFICER'S DUTIES

(Amir, Koch, Durham and John Does 1-50)

11.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

11.2  RCW 23B.08.420 requires corporate officers to discharge their duties in good faith and in the best interest of the corporation.

11.3  By improperly converting corporate funds to their personal benefit and engaging in other wrongful acts, Defendants are in violation of RCW 23B.08.240.

## XII.    NINETH CAUSE OF ACTION – VIOLATION OF DIRECTOR'S DUTIES

(Amir, Koch, Durham and John Does 1-50)

12.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

12.2  RCW 23B.08.300 requires corporate directors to discharge their duties in good faith and in the best interest of the corporation.

12.3  By improperly converting corporate funds to their personal benefit and engaging in other wrongful acts, Defendants are in violation of RCW 23B.08.300.

## XIII. TENTH CAUSE OF ACTION –
## BREACH-SPECIFIC PERFORMANCE

(PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, and
PetroMed Consortium Corporation of the Bahamas)

13.1  Plaintiffs reallege every allegation previously pled as if such
allegations were stated herein in their entirety.

13.2  The Stock Investment Agreement contains material terms of the
contract between the parties which Plaintiffs seek to enforce herein.

13.3  By reason of Defendants' refusal to issue new certificates from
PetroMed, PLC, Defendants are in breach.

13.4  By reason of Defendants' breach of the parties' agreement, Plaintiffs
request specific performance upon the written contractual terms.

## XIV.  ELEVENTH CAUSE OF ACTION –
## BREACH OF CONTRACT DAMAGES

(PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation, and
Petromed Consortium Corporation of the Bahamas)

14.1  Plaintiffs reallege every allegation previously pled as if such
allegations were stated herein in their entirety.

14.2  As a result of Defendants' (and its successors') failure to comply with
the terms of the parties' agreements, Defendants are in breach of same.

14.3  By reason of the foregoing breach, and as a direct and proximate

result thereof, Plaintiffs have suffered damages in a sum to be determined at time of trial.

## XV.   TWELFTH CAUSE OF ACTION –
## WASHINGTON SECURITIES ACT VIOLATIONS

(Amir, Koch, Durham, Harris and John Does 1-50)

15.1   Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

15.2   Defendants Hagai Amir, Russell Koch, Lyle Durham, Thomas Harris and John Does 1 through 50 were at all times herein, directors, officers, agents or employees of PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Consortium Corporation and/or PetroMed Corporation.

15.3   Said individual Defendants knew or should have known of the wrongful acts or transactions and/or were personally involved and/or materially aided in the wrongful acts or transactions. Specifically, that material representations were made with the intent to deceive Plaintiffs and transactions were conducted with the intent to defraud the Plaintiffs. Plaintiffs have been damaged as a direct result, and Defendants have profited from their violations of the Washington Securities Act.

15.4   Pursuant to RCW 21.20.430, Defendants Amir, Koch, Durham, Harris and John Does 1-50 are jointly and severally liable for any and all violations of the

FIRST AMENDED COMPLAINT: 42

Washington Securities Act committed by PetroMed, Inc., PetroMed, Ltd., PetroMed PLC, PetroMed Corporation and/or Petromed Consortium Corporation.

15.5  By reason of Defendants wrongful acts and/or transactions or involvement and or knowledge or constructive knowledge of said acts or transactions, Plaintiffs have been damaged in an amount to be determined at trial with interest and attorneys fees to be calculated as part of the damages.

## XVI.  THIRTEENTH CAUSE OF ACTION – FRAUD

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation,  Petromed Consortium Corporation of the Bahamas, and John Does 1-50)

16.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

16.2  Defendants represented that in return for an investment, Plaintiffs would receive shares of common stock and that the PetroMed entity in which they were investing had certain valuable assets.  Each of those promises were material elements of the stock investment agreements between the parties.

16.3  PetroMed, Inc.'s successor companies have refused to deliver (on a share for share basis) new certificates for the shares held in PetroMed, Inc. and have diverted company assets.

16.4  Defendants made material representations that they would deliver

FIRST AMENDED COMPLAINT:  43

shares in PetroMed, Inc. with knowledge that they would never be delivered, thus that such representations were, in fact, false.    Defendants made material representations that the PetroMed entity in which Plaintiffs were investing held certain valuable assets. The Defendants made these representations, knowing of their falsity, with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner alleged.

16.5    Defendants also made material representations that they would deliver all shareholders of PetroMed, Inc. new stock certificates in PetroMed, Inc.'s successor, PetroMed, PLC.  Hagai Amir announced to all shareholders that this would be a share for share transfer with identical ownership. The Defendants made these representations, knowing of their falsity, with the intent  to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the manner alleged.

16.6    Plaintiffs, at the time said representations were made by Defendants and at the time Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and believed them to be true.  In reliance on said representations, Plaintiffs were induced to and did  invest in PetroMed.  Had Plaintiffs known of the true facts, they would not have taken such action. Plaintiffs' reliance on Defendants' representations was reasonable and justified.

16.7   As a proximate result of Defendants' fraud and deceit, Plaintiffs have

suffered general and special damages in a sum to be determined at trial.

## XVII. FOURTEENTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION

(Amir, Koch, Durham, Harris, PetroMed, Inc., PetroMed, Ltd., PetroMed,
PLC, PetroMed Corporation, Petromed Consortium Corporation of the
Bahamas, and John Does 1-50)

17.1   Plaintiffs reallege every allegation previously pled as if such

allegations were stated herein in their entirety.

17.2   Defendants' representations to Plaintiffs as stated herein, were made

in the course of their business, profession or employment.   Such representations

were false and Defendants knew of their falsity and/or Defendants had no

reasonable grounds for believing them to be true, thus they did not exercise

reasonable care in obtaining or communicating the information and the false

representations were made to induce Plaintiffs to invest money in Defendants'

business.

17.3   As a proximate result of Defendants' negligent misrepresentations,

Plaintiffs suffered damages in a sum to be determined at time of trial.

## XVIII.    FIFTHTEENTH CAUSE OF ACTION –
## UNIFORM FRAUDULENT TRANSFER ACT VIOLATION

(Amir, Koch, Durham, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC,
PetroMed Corporation, Petromed Consortium Corporation of the Bahamas
and John Does 1-50)

18.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

18.2  Plaintiffs are creditors of Defendant PetroMed, Inc. and its successors. Plaintiffs paid PetroMed, Inc. the funds described herein in return for shares of stock Plaintiffs never received and do not have.    By way of example of Defendants' wrongful conduct and not by way of limitation, Defendants owe Plaintiffs for which Plaintiffs bargained.

18.3  Defendants wrongfully converted for no consideration assets of the business rightfully owned by the shareholders to a shell corporation controlled by Defendants, PetroMed, Ltd. and other entities, with the intent to hinder, delay or defraud Plaintiffs after incurring a debt to Plaintiffs.

18.4  Said transfer is a violation of RCW 19.40 et seq., and Plaintiffs have been damaged and are entitled to relief as authorized under said statute.

FIRST AMENDED COMPLAINT: 46

## XIX.  SIXTEENTH CAUSE OF ACTION –
## CONSTRUCTIVE FRAUD

(Amir, Koch, Durham, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC,
PetroMed Corporation, PetroMed Consortium Corporation of the Bahamas,
and John Does 1-50)

19.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety

19.2  Defendants purposefully and intentionally converted assets of the PetroMed entities in a direct attempt to divest the Plaintiffs of their rightful ownership in the same.

19.3  The acts alleged herein demonstrate the Defendants had a fiduciary duty to the Plaintiffs owing them a heightened standard of care, the Defendants breached that fiduciary duty, amounting to constructive fraud, and the Plaintiffs were injured as a direct result of such breach in an amount to be proven at trial.

## XX.  SEVENTEENTH CAUSE OF ACTION -
## CONSUMER PROTECTION ACT VIOLATION

(Amir, Koch, Durham, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC,
PetroMed Corporation, Petromed Consortium Corporation of the Bahamas,
and John Does 1-50)

20.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

20.2  Defendants' coercion of Plaintiffs to enter into a business transaction

FIRST AMENDED COMPLAINT: 47

by making false promises to Plaintiffs was an unfair and deceptive act occurring in the stream of commerce.

20.3   The Defendants' and their agents' actions and/or omissions affected the public interest, were committed in the course of Defendants' business and Defendants' actions affected others.

20.4   Because Defendants Amir, Koch, Durham and John Does 1-50 actively solicited individuals in Washington State as investors, and since PetroMed, Inc.'s successors' shares are publicly traded, the deceptive practices had the potential to significantly impact the public interest.

20.5   As a direct and proximate cause of Defendants' wrongful actions and/or omissions, Plaintiffs suffered damages in violation of the Washington State Consumer Protection Act, RCW 19.86.020.

## XXI. EIGHTEENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Amir, Koch, and John Does 1-50)

21.1   Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

21.2   As directors, officers shareholders and/or agents of PetroMed, Inc., PetroMed, Ltd. and/or PetroMed, PLC, and/or PetroMed Corporation Defendants Koch, Amir, and John Does 1-50 owed Plaintiffs a fiduciary duty with the utmost

FIRST AMENDED COMPLAINT: 48

duty of undivided loyalty and fairness as well as other duties imposed and implied by law.

21.3  By refusing to deal fairly with Plaintiffs, by wrongfully converting assets that should have been owned by PetroMed, Inc. to PetroMed, PLC and PetroMed, PLC to PetroMed Corporation without consideration, and without shareholder notice or approval; and by refusing to deliver to Plaintiffs stock certificates reflecting their true ownership interest in the successor companies and other wrongful conduct, Defendants breached their fiduciary duties to Plaintiffs.

21.4  Said breach has caused Plaintiffs to suffer damages in a sum to be determined at the time of trial.

## XXII. NINETEENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY

(Durham and John Does 1-50)

22.1  Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

22.2  As a director, officer and shareholder of PetroMed, Inc., PetroMed, Ltd. and/or PetroMed, PLC, and/or PetroMed Corporation, Defendant Lyle Durham owed Plaintiffs a fiduciary duty of loyalty and fairness as well as other duties imposed and implied by law.

22.3  As a member of the board of directors, Lyle Durham gave no

FIRST AMENDED COMPLAINT: 49

direction to the company, and as an officer failed to do anything to insure minority shareholders in the company were protected.

22.4   By completely failing to perform all of his duties and responsibilities as a director and officer, said breach has caused Plaintiffs to suffer damages in a sum to be determined at the time of trial.

### XXIII.   TWENTIETH CAUSE OF ACTION – CONVERSION

(Koch, Amir, Durham, PetroMed, Inc., PetroMed, Ltd., PetroMed, PLC, PetroMed Corporation,  Petromed Consortium Corporation of the Bahamas, and John Does 1-50)

23.1   Plaintiffs reallege every allegation previously pled as if such allegations were stated herein in their entirety.

23.2   Throughout the existence of PetroMed, Inc. and its successor entities, Defendants solicited investors with the promise that funds acquired by PetroMed, Inc. through either investment or through financing would be used to acquire exploratory permits from the government of Israel, and that said permits would become assets of PetroMed, Inc.

23.3   In 2006, without notice to or authorization from the shareholders of PetroMed, Inc., Defendants directed that the exploratory permits be issued to PetroMed, Ltd. rather than PetroMed, Inc.  By their actions, Defendants willfully and without justification interfered and/or deprived the Plaintiffs of their rightful

FIRST AMENDED COMPLAINT:  50

ownership in the assets of the companies in which they invested.

23.4   As a result of Defendants' conversion of assets from PetroMed, Inc., Plaintiffs have suffered damages in an amount to be established at time of trial.

WHEREFORE, having stated sufficient facts upon which to base a claim for relief, Plaintiffs pray for judgment jointly and severally as follows:

1.      For an order declaring specific performance of the parties' agreements;

2.      For judgment against Defendants for breach of contract in an amount to be proven at time of trial;

3.      Plaintiffs are entitled to recover actual damages sustained as set forth in RCW 9A.82.100(4)(d), plus additional amounts incurred in bringing this cause of action, including but not limited to, reasonable investigative and attorney's fees as set forth in RCW 9A.82.100(1)(a) and (c);

4.      Plaintiffs are entitled to recover three times the actual damages sustained pursuant to RCW 9A.82.100(4)(d);

5.      Imposition of civil penalties, up to **$250,000,** against the Defendants, in addition to awarding the costs of the suit, including reasonable investigative and attorney's fees as provided or in RCW 9A.82.100(4)(d);

6.     Grant Plaintiffs such other and additional relief as provided for in RCW 9A.82.100, including but in no way limited to, reasonable restrictions on future activities of Defendants, ordering dissolution of certain PetroMed entities and ordering a forfeiture of the assets at issue;

7.     For judgment against the Defendants for violations of the Exchange Act and for Plaintiffs' attorneys fees and costs;

8.     For injunctive relief, including but not limited to, that available pursuant to case law interpreting and pursuant to the Exchange Act, to secure the assets of PetroMed, including but not limited to the drilling licenses 347 and 348 and the exploration permit 199 issued by the government of Israel;

9.     For judgment against the Defendants for damages incurred by the Plaintiffs as a result of Defendants' civil conspiracy;

10.     For judgment against Defendants for violation of the Securities Act of Washington in an amount to be proven at time of trial, along with Plaintiffs' attorneys' fees and costs per RCW 21.20.430(1);

11.     For judgment against Defendants for fraud and/or negligent misrepresentation in an amount to be proven at time of trial;

12.     For judgment against Defendants awarding Plaintiffs damages and injunctive relief for fraudulent transfers in an amount to be proven at time of trial;

FIRST AMENDED COMPLAINT: 52

13.   For judgment against Defendants awarding Plaintiffs damages and attorney fees and costs for constructive fraud;

14.   For judgment against Defendants awarding Plaintiffs actual damages as well as treble damages and attorney fees for violation of the Consumer Protection Act in amounts to be proven at time of trial;

15.   For judgment against Defendants for breach of their fiduciary duties to Plaintiffs in an amount to be proven at time of trial and for attorney fees for the same;

16.   For judgment against Defendants for conversion, and for an order unwinding the transfer of 25,142,427 shares in PetroMed, PLC to PetroMed, Ltd.;

17.   For an award of Plaintiffs' reasonable attorneys' fees and costs incurred herein;

18.   That all Defendants and all of their directors, officers, employees, agents, servants and all other persons in active concert or in participation with them, be enjoined temporarily during pendency of this action, and permanently thereafter, from committing any more acts in furtherance of the schemes alleged herein and take such other and further action as is necessary to protect and enjoin any activities by Defendants that in any way jeopardize the company assets;

19.   That all Defendants be required to account for all gains, profits, and

FIRST AMENDED COMPLAINT: 53

advantages derived from their several improper acts alleged herein, including all violation(s) of applicable State and Federal law;

20.    That any and all named individual Defendants who now are or have in the past been officers/directors of the Company be removed from office as an officer/director of the Company, and be barred from re-election or appointment as an officer/director of the Company;

21.    That judgment be entered for Plaintiffs and against all Defendants for Plaintiffs' actual damages, and for any gains, profits, or advantages attributable to said violations;

22.    That all Defendants pay to Plaintiffs their costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable counsel's fees, at a minimum of $200.00 per hour worked (Plaintiffs' standard professional rate at the start of this action);

23.    That Plaintiffs be granted leave to amend this Complaint; and

24.    That Plaintiffs have such other and further relief as this Court deems just and proper, under the circumstances of this action.

DATED this ___ day of _____, 2009.

STAMPER RUBENS, P.S.

By: _____
MICHAEL H. CHURCH
WSBA # 24957
MELODY D. FARANCE
WSBA #34044
DIANNE K. RUDMAN
WSBA #32794
720 W. Boone, Ste. 200
Spokane, WA  99201
mchurch@stamperlaw.com
mfarance@stamperlaw.com
drudman@stamperlaw.com
(509) 326-4800
Attorneys for Plaintiffs

FIRST AMENDED COMPLAINT: 55

## CERTIFICATE OF SERVICE

I hereby certify that on the _6th_ day of October 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

J. J. Sandlin
Sandlin Law Firm
P.O. Box 1707
Prosser, WA 99350
Email: sandlinlaw@msn.com

John J. Tollefsen
Tollefsen Law PLLC
18225 Eighth Place West
Lynnwood, WA  98037
Email: john@tollefsenlaw.com


MICHAEL H. CHURCH
WSBA # 24957
Stamper Rubens, P.S.
720 W. Boone, Ste. 200
Spokane, WA  99201
Phone: 509-326-4800
Fax: 509-326-4891
mchurch@stamperlaw.com

H:\Fattah-Omar\Pldgs\FirstAmendedComplaint.Final.doc

FIRST AMENDED COMPLAINT:  56